UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAFER REDI-MIX, INC.,

        Plaintiff-Appellant,                  Case No. 1:08-cv-803

v.                                                   HON. JANET T. NEFF

ROBERT D. CRAFT,

        Defendant-Appellee.

_____/

## OPINION

Pursuant to 28 U.S.C. § 158(a)(1), plaintiff-appellant Shafer Redi-Mix, Inc. appeals from the June 7, 2008 Judgment of United States Bankruptcy Judge Scott W. Dales dismissing Shafer Redi-Mix's cause of action and discharging the debt owed Shafer Redi-Mix by defendant-appellee Robert D. Craft. This Court finds that the relevant facts and arguments are adequately presented in appellant Shafer Redi-Mix's materials and that oral argument would not aid the decisional process. For the following reasons, the Court denies the appeal and affirms the judgment of the bankruptcy court.

        I.    BACKGROUND

        A.    *State Court Action*

Shafer Redi-Mix is in the business of providing concrete and concrete supplies to contractors. In April 2003, Shafer Redi-Mix filed a three-count Complaint against Craft in the 55th District Court of Michigan, alleging breach of contract, quantum meruit, and unjust enrichment

(6/2/2008 Transcript [Pl. Exh. F] 22, 25).  Shafer Redi-Mix sought the money Craft allegedly owed it from purchases Craft made of concrete and concrete supplies (*id.* 25).  Craft failed to answer the state court Complaint or file an appearance, and the state court entered a default judgment against Craft on July 9, 2003 in the amount of $21,982.59 (*id.* 13, 21-23).  Craft did not pay any amount toward the default judgment (*id.* 23).

### B. *Bankruptcy Court Action*

Craft filed for Chapter 7 bankruptcy in October 2007.  Shafer Redi-Mix instituted an adversary proceeding against Craft in bankruptcy court to determine whether the debt Craft owed it was not dischargeable in bankruptcy.  *See* 11 U.S.C. § 523(a)(4) ("A discharge under section 727 ... of this title does not discharge an individual debtor from any debt – (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny").

In its bankruptcy court Complaint, Shafer Redi-Mix alleged that Craft had subcontracted work to Shafer Redi-Mix, that Craft had been paid by his clients for the work that Shafer Redi-Mix performed, and that "[t]he monies collected pursuant to the construction and service contracts by the Defendant are construction funds and such funds are impressed with a trust" pursuant to the Michigan Building Contract Fund Act (MBCFA), MICH. COMP. LAWS § 570.151 *et seq.* (Compl. [Pl. Exh. A] ¶¶ 7-10).  Shafer Redi-Mix alleged that by failing to pay Shafer Redi-Mix for his concrete and concrete supply purchases, Craft breached the fiduciary duty to Shafer Redi-Mix imposed by the Building Contract Fund Act and that the misappropriation and/or embezzlement of trust funds demonstrated an intent to defraud Shafer Redi-Mix (*id.* ¶¶ 14-17).

However, as to whether he had in fact collected monies pursuant to the third-party construction and service contracts, Craft "neither admit[ted] nor denie[d] the allegations for wont

2

of knowledge sufficient to form a belief to its truth, leaving Plaintiff to its proofs" (Df. Ans. [Pl. Exh. B] ¶ 8).

The bankruptcy court afforded Craft an opportunity to amend his Answer because the court "doubt[ed] whether the Defendant's Answer complies with Rules 8 and 9011, and because an amended answer more squarely meeting the Plaintiff's allegations may narrow the issues for trial" (1/15/2008 Pretrial Order [Pl. Exh. C] p. 2). Craft filed an Amended Answer on February 13, 2008, but he offered the same reply to whether he collected monies on the contracts, "neither admit[ting] nor den[ying] the allegations for wont of knowledge sufficient to form a belief to its truth, leaving Plaintiff to its proofs" (Am. Answer [Pl. Exh. D] ¶ 8). *See* FED. R. CIV. P. 8(b)(5) ("A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial.").

Craft admitted that during the years 2000 and 2001, Shafer Redi-Mix provided him with concrete and concrete products on an "open account" (Df. Resp. [Pl. Exh. E] 1). Craft further admitted that he incorporated the concrete products and/or installed the concrete in projects or construction for third parties (*id.*). However, Craft indicated that he could not identify these customers nor produce any corresponding records, contracts, invoices or receipts because he did not have records of that information and had no independent recollection of the information from those years (*id.* 2-4).

Shafer Redi-Mix listed Craft as one of its witnesses at the bench trial, which was scheduled for Monday, June 2, 2008 (6/2/2008 Tr. 5). Near the close of business on the Friday before trial, Shafer Redi-Mix faxed a subpoena to Craft's attorney's office, requesting Craft's appearance at trial (*id.* 9-10). Craft did not appear at trial. The trial court quashed the subpoena, ruling that it "was not

3

properly served" and noting that service of the subpoena did not give Craft sufficient notice to make travel arrangements (*id.* 11-12). The parties proceeded to try the case with the testimony of Judd Snyder (the general manager of operations at Shafer Redi-Mix) and the available documentary evidence (the Complaint in bankruptcy court, the state court Default Judgment, and Craft's responses to the interrogatories).

Snyder testified that the materials Craft ordered from Shafer Redi-Mix were delivered to job sites for Craft's customers (6/2/2008 Tr. 18-19). Snyder testified that Craft admitted to him that he owed Shafer Redi-Mix money (*id.* 19-20). Snyder remembered discussing with Craft the difficulty Craft was having in receiving payment on jobs that did not involve Shafer Redi-Mix (*id.* 28-29).

Although Shafer Redi-Mix pleaded in its Complaint in bankruptcy court that the "monies collected pursuant to the construction and service contracts" were impressed with a trust, Shafer Redi-Mix argued at the end of its case in bankruptcy court that Craft was a fiduciary for the *materials* Shafer Redi-Mix supplied to third parties (6/2/2008 Tr. 31-32). Shafer Redi-Mix's theory during closing argument was that the ready mix materials were the res of the trust and the res would have "turned into cash," i.e., the trust was a "shifting trust" (*id.* 32, 42). Shafer Redi-Mix argued that Craft bore the burden of showing that he was paid for the work that he performed for the third parties, which he failed to show (*id.* 33).

In response, Craft's attorney delineated the elements necessary to show a violation of the Michigan Building Contract Fund Act and argued that Shafer Redi-Mix's case failed because Shafer Redi-Mix submitted evidence only of a breach of contract, not any evidence that a trust was created (6/2/2008 Tr. 34-37). Craft pointed out that the trust res would obviously be the money Craft was paid for the projects in which he used the concrete (*id.*). Craft pointed out that a partial explanation

4

for the lack of evidence about these projects was the fact that some of the invoices were almost eight years old by the time of the adversary proceeding in bankruptcy court (*id.*). Craft's attorney represented that Craft did not know which projects incorporated Shafer Redi-Mix's products nor whether he was paid on those jobs (*id.* 36).

The bankruptcy court ruled from the bench in Craft's favor. The bankruptcy court observed that there is a tendency in non-dischargeable debt actions to "expand [§ 523(a)(4)] to not just express or technical, or in this case statutory trusts, but to 'trusts,' and I use the word loosely, trusts that are really equitable remedial devices designed to prevent unjust enrichment" (6/2/2008 Tr. 41). The bankruptcy court opined that Sixth Circuit case law, however, is "very clear that we're only dealing with express or technical or statutory trusts" (*id.*).

Accordingly, the bankruptcy court rejected the "shifting trust" theory Shafer Redi-Mix proffered, pointing out that the Michigan Building Contract Fund Act "describes the res as the 'Building Contract Fund,' not as the concrete that was delivered from the Plaintiff to the job site that the Defendant was in charge of" (6/2/2008 Tr. 45). Further, the bankruptcy court found that there was no evidence that Craft was paid for labors and materials provided on a construction project (*id.* 45-46).

The bankruptcy court noted that Judge Spector, in his opinion in *Cappella v. Little (In re Little),* 163 B.R. 497 (E.D. Mich. 1994), extensively and persuasively considered the burden of proof in an MBCFA non-dischargeable debt proceeding, "assigning the burden of proof to the Debtor Defendant to account for the funds, but only after the Plaintiff has proven the existence of a trust relationship" (6/2/2008 Tr. 46). The court quoted Judge Spector's reasoning that "it was appropriate to require the Debtor to account for trust funds and that doing so did not substantially undermine

bankruptcy's fresh start policy because in the first instance the beneficiary must, as a preliminary matter, establish that the Debtor did, in fact, receive funds in a fiduciary capacity" (*id.*).

The bankruptcy court concluded the following:

> [The] proofs in the present case show only that the Plaintiff delivered concrete and that the Defendant failed to pay for it.  Significantly, I find there was no proof that the Defendant ever received any funds from any third party and the statute and the case law teach us that the funds delivered to the Defendant are the subject or res of the trust, not the goods delivered by the Plaintiff.  As such, Plaintiff has failed to establish a crucial element of his case, or its case, that is to say the existence of a fiduciary relationship.  The failure of proof on this crucial element renders all other disputes immaterial and significantly, the burden never shifted to the Defendant to prove that he lived up to his statutory duties.  The Plaintiff never established the existence of a fiduciary duty.  The judgment, then, will be for the Defendant of no cause of action.

(6/2/2008 Tr. 48).  The bankruptcy court judge added, however, that he was a "little bit unhappy to, in effect, reward the Defendant for not fully participating in this proceeding, but I feel that I am constrained by the record before me to find for the Defendant, judgment, no cause of action, failure of crucial element of proof, namely the existence of a fiduciary duty" (*id.*).

On June 7, 2008, the bankruptcy court entered a "Judgment Regarding Dischargeability of Debt," dismissing Shafer Redi-Mix's cause of action and discharging the debt owed Shafer Redi-Mix by defendant Craft pursuant to the state court judgment.

C.     *Appeal to District Court*

On August 25, 2008, pursuant to 28 U.S.C. § 158(a)(1), Shafer Redi-Mix filed its Notice of Appeal in this Court.  The Clerk of the Court issued brief deadlines, indicating that Shafer Redi-Mix's appellant brief was due September 10, 2008 and that Craft's appellee brief was due within 15 days after service of the appellant brief (Dkt 3).  *See* FED. R. BANK. P. 8009(a).

On September 10, 2008, Shafer Redi-Mix filed its appellant brief, presenting the following three questions for review:

1. Whether the statutory trust created by the Michigan Builders [sic, Building] Construction [sic, Contract] Fund Act is created when it is funded with assets from any person, including a subcontractor?

2. Whether the interpretation of this statute ought to follow the actual language of the statute?

3. Whether, when determining the applicable res of a trust, the court ought to look to the state law of Michigan and the common law of trusts?

(Pl. Br. vi).

Craft did not thereafter file his appellee brief. This Court issued an order on October 24, 2008, extending the date for filing an appellee brief to October 31, 2008 (Dkt 5). However, Craft never supplied this Court with an appellee brief. Shafer Redi-Mix did not request any sanction for Craft's failure to file an appellee's brief.[1]

## II. ANALYSIS

### A. *Standard of Review*

"This Court must review a bankruptcy court's findings of fact for clear error and the bankruptcy court's conclusions of law de novo." *Westbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Serv., Inc.),* 106 F.3d 1255, 1259 (6th Cir. 1997). "On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order,

---

[1] Had this Court deemed oral argument necessary, Craft's failure to file a brief may have barred his participation in oral argument. *See, e.g., In re Rauso,* 212 B.R. 242, 243-44 (E.D. Pa. 1997) (discussing application of FED. R. APP. P. 31(c), which instructs that "[i]f an appellee fails to file a brief, the appellee will not be heard at oral argument except by permission of the court."); *United States v. Garami* 184 B.R. 834, 835 (M.D. Fla. 1995) (same); *Silk Plants, Etc. Franchise Systems, Inc. v. Register,* 100 B.R. 360, 363 (M.D. Tenn. 1989) (same); *A. Marcus, Inc. v. Farrow,* 94 B.R. 513, 513-14 (N.D. Ill. 1989) (same).

or decree or remand with instructions for further proceedings." FED. R. BANK. P. 8013. "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Id.*

Shafer Redi-Mix's questions presented in this case address the manner in which a trust under the Michigan Building Contract Fund Act may be created. Shafer Redi-Mix opines that "an MBCFA trust, like most trusts, can be funded when any sort of asset is placed in it." The issue concerns the proper interpretation of the Act and is therefore reviewed de novo by this Court.

B.   *The Bankruptcy Code's Defalcation Provision*

Congress made a judgment expressed in § 523 of the Bankruptcy Code that a debtor should not be freed from certain categories of debts. Pertinent here is the exception set forth in § 523(a)(4), which excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). Under § 523(a)(4), a defalcation occurs when a debtor either misappropriates or fails to properly account for those funds held in a trust. *R.E. America Inc. v. Garver (In re Garver),* 116 F.3d 176, 180 (6th Cir. 1997) (citing *Capitol Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.),* 760 F.2d 121, 125 (6th Cir. 1985)).

"A debt is nondischargeable as a defalcation when the preponderance of the evidence establishes: '(1) a preexisting fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss.'" *Bd. of Trustees of the Ohio Carpenters Pension Fund v. Bucci (In re Bucci),* 493 F.3d 635, 639 (6th Cir. 2007) (quoting *Commonwealth Land Title Co. v. Blaszak (In re Blaszak),* 397 F.3d 386, 390 (6th Cir. 2005)).

The Sixth Circuit Court of Appeals construes the phrase "fiduciary capacity" found in the defalcation provision of § 523(a)(4) more narrowly than the phrase is used in other circumstances. *In re Bucci, supra.* Application is limited to "only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Id.* at 639-640 (quoting *In re Garver,* 116 F.3d at 180). The Sixth Circuit has refused to extend the provision to constructive or implied trusts imposed by operation of law as a matter of equity. *Id.* at 639.

To establish the existence of an express or technical trust, a creditor must demonstrate: "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *In re Bucci, supra* at 640 (quoting *In re Blaszak,* 397 F.3d at 391-92). Though the court in *Blaszak* spoke of "an intent to create a trust," it is clear in this circuit that a statute may create a trust for purposes of § 523(a)(4) if that statute (1) defines the trust res, (2) imposes duties on the trustee, and (3) those duties exist prior to any act of wrongdoing. *Id.* Appellant Shafer Redi-Mix relies on the Michigan Building Contract Fund Act, discussed *infra.*

C. *Michigan's Building Contract Fund Act (MBCFA)*

1. Background

The Michigan Building Contract Fund Act, MICH. COMP. LAWS § 570.151 *et seq.,* "was originally passed in 1931 as a Depression-era measure to afford additional protection to subcontractors and materialmen." *DiPonio Constr. Co., Inc. v. Rosati Masonry Co., Inc.,* 631 N.W.2d 59, 63 (Mich. Ct. App. 2001) (quoting *People v. Miller,* 259 N.W.2d 877 (Mich. Ct. App. 1977)). "During that era, builders often undertook construction projects that were larger than their ability to finance." *Id.* "Therefore, builders often paid suppliers and materialmen on older projects with the funds received on more current operations." *Id.* "When difficult economic times arrived,

9

the builders became insolvent and many subcontractors and materialmen were never paid." *Id.* "In light of this history, it is clear that the design of the act is to prevent contractors from juggling funds between unrelated projects." *Id.*

The Michigan Building Contract Fund Act, which is sometimes referenced in case law as the "Michigan Builders Trust Fund Act," imposes a "'trust' upon the building contract fund paid by any person to a contractor or subcontractor." *Carlisle Cashway, Inc. v. Johnson (In re Johnson),* 691 F.2d 249, 252 (6th Cir. 1982). Section 1 of the Act provides that "[i]n the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes." MICH. COMP. LAWS § 570.151. "The purpose of the act is to create a trust fund for the benefit of material men and others under private construction contracts." *Weathervane Window, Inc. v. White Lake Construction Co.,* 480 N.W.2d 337, 341 (Mich. Ct. App. 1991).

The Michigan Building Contract Fund Act is a penal statute, but a civil cause of action for a violation of its provisions has been recognized for years. *DiPonio,* 631 N.W.2d at 62. "The prima facie elements of a civil cause of action brought under the [MBCFA] include (1) the defendant is a contractor or subcontractor engaged in the building construction industry, (2) a person paid the contractor or subcontractor for labor or materials provided on a construction project, (3) the defendant retained or used those funds, or any part of those funds, (4) for any purpose other than to first pay laborers, subcontractors, and materialmen, (5) who were engaged by the defendant to perform labor or furnish material for the specific project." *Id.*

Shafer Redi-Mix pleaded in its Complaint in bankruptcy court that the monies collected pursuant to Craft's construction and service contracts were construction funds impressed with a trust pursuant to the Michigan Building CFA and that the breach of the resulting fiduciary obligation would constitute fraud or defalcation within the meaning of Bankruptcy Code § 523(a)(4) and concomitantly prevent Craft's debt to Shafer Redi-Mix from being dischargeable. *See Selby v. Ford Motor Co.,* 590 F.2d 642, 647 (6th Cir. 1979) ("We ... believe that federal bankruptcy law should recognize and enforce the property rights created by state law under the Michigan statutory trust.").

There is no dispute that, had there been evidence of monies paid to Craft by contracting parties, the money would have been held in trust by him under the Michigan Building Contract Fund Act. *See, e.g., Huizinga v. United States,* 68 F.3d 139 (6th Cir. 1995) (holding that payments from a building contract fund to subcontractors could not be set aside as preferential transfers because the subcontractors held title to the money in the building contract fund as trust beneficiaries under the MBCFA); *In re Johnson,* 691 F.2d at 249 (holding that a debtor who knowingly used monies in a building contract fund for his personal use while the debt to his supplier remained unpaid created a debt nondischargeable as defalcation by a fiduciary); *B.F. Farnell Company v. Monahan,* 141 N.W.2d 58 (Mich. 1966) (holding that funds a contractor receives in payment for work performed under contract are trust funds held for benefit of materialmen and such funds do not constitute a part of the contractor's bankruptcy estate).

The issue on appeal is the propriety of Shafer Redi-Mix's theory at the conclusion of its case: when left with no evidence of monies in fact being collected, Shafer Redi-Mix argued that Craft was a fiduciary for the *materials* Shafer Redi-Mix supplied to third parties.

2.	Trust Res

Because there was no evidence that Craft received funds from any third party (only that third parties received materials from Shafer Redi-Mix), the bankruptcy court concluded that Shafer Redi-Mix never established the existence of a fiduciary duty under the Act and, therefore, no fraud or defalcation prevented the debt from being dischargeable.  The bankruptcy court ruled that the Act and relevant case law instruct that any monetary funds delivered to Craft would be the res of the trust created by the Act, not the goods Shafer Redi-Mix delivered.

On appeal, Shafer Redi-Mix acknowledges that "a line of cases provides that in order for the statutory builders trust to exist, giving rise to the contractor's fiduciary duties, that it must be shown that *monetary* payment was received from the property owner" (Pl. Br. 3 [emphasis in original]). However, Shafer Redi-Mix argues that those courts never had a reason to rule on the "full range of available forms of funding that can create the trust" under the Michigan Building Contract Fund Act (*id.* 20).  Shafer Redi-Mix therefore dismisses the references to monetary payments in these cases as "obiter dicta or unnecessarily-limiting language" (*id.* 22).

Similarly, Shafer Redi-Mix argues that the language of the Building Contract Fund Act does not rule out its theory.  According to Shafer Redi-Mix, the Building Contract Fund Act does not expressly define "fund" nor does the Act expressly require a "monetary payment" by the property owner.  Shafer Redi-Mix argues that the fact that section 3 of the Act references "moneys" only bolsters its proffered statutory construction because section 1 of the Act, which defines the res, does not use the word "moneys."

Shafer Redi-Mix provides quotes gleaned from treatises that a trustee may hold in trust any interest in any type of property (Pl. Br. 10).  Shafer Redi-Mix points out that the most common way

to fund an estate-planning trust is to deed the grantor's real estate to the care of the trustee (*id.* 11-12). Last, Shafer Redi-Mix points to two federal statutes – the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq.,* and the Packers and Stockyards Act, 7 U.S.C. § 181 *et seq.,* which Shafer Redi-Mix proffers as examples of statutes dictating that a trust results whenever goods are entrusted to "middlemen" (*id.* 15).

This Court is not persuaded by the analysis Shafer Redi-Mix proffers. Shafer Redi-Mix's analysis supports only the proposition that statutory trusts *may* be created by the delivery of non-monetary assets. For the following reasons, Shafer Redi-Mix's arguments and examples do not support the more specific conclusion Shafer Redi-Mix would like this Court to make: that a trust under the Michigan Building Contract Fund Act is created by the delivery of building materials.

Most important, the plain language of the Act does not support Shafer Redi-Mix's position. Section 1 of the Michigan Building Contract Fund Act provides in pertinent part that "the contractor or subcontractor shall be considered the trustee of all *funds* so paid to him for building construction purposes." MICH. COMP. LAWS § 570.151 (emphasis added). Section 3 more pointedly provides that "[t]he appropriation by a contractor, or any subcontractor, of any *moneys* paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud." MICH. COMP. LAWS § 150.153 (emphasis added).

Additionally, the case law in this circuit does not support Shafer Redi-Mix's position. The Sixth Circuit Court of Appeals has recognized that "[u]nder trust fund theory, a subcontractor's beneficial interest arises when the owner pays the building contract fund, even though a subcontractor cannot bring suit until the general contractor fails to pay a 'matured' debt." *Selby,* 590

F.2d at 645 (citing *B. F. Farnell Co. v. Monahan,* 141 N.W.2d 58 (Mich. 1966)). In *In re Johnson,* in concluding that the Michigan Building Contract Fund Act imposed a trust relationship that satisfied the Bankruptcy Code's defalcation provision, the Sixth Circuit found that "[t]he trust res is clearly defined as the *monies* paid by any person into the building contract fund." 691 F.2d at 252 (emphasis added). The *Johnson* Court instructed that "[t]he fiduciary relationship established by the Building Contract Fund Act arises at the time any *monies* are paid to the contractor or subcontractor." *Id.* at 253 (emphasis added). Similarly, the Court stated that "[u]ntil some person makes a payment into the building contract fund, the contractor or subcontractor is liable to suppliers and laborers solely based on contract." *Id.*

Accordingly, the bankruptcy court properly rejected Shafer Redi-Mix's theory that the ready mix materials it delivered were the res of the statutory trust, i.e., that the trust was a "shifting trust" where the materials would have "turned into cash." Indeed, in *Meloi v Kendall Electric, Inc. (In re R.W. Leet Electric, Inc.)*, 372 B.R. 846, 857-59 (B.A.P. 6th Cir. 2007), where there was proof that some money was paid to a contractor, the Bankruptcy Appellate Panel rejected the proposition that the Michigan Building Contract Fund Act permitted a "skipping" or "floating" trust, where the contractor used the trust funds for another purpose, borrowed to replace them, and the debtor was unable to trace the trust funds into their substituted form.

It is clear to this Court that absent proof of any monies paid into a building contract fund in this case, the predicate for excepting Craft's debt from his discharge in bankruptcy was missing. Shafer Redi-Mix's attempt to fill the evidentiary gap with proof that it delivered materials to contracting parties is unavailing inasmuch as the Michigan Building Contract Fund Act impresses a trust upon construction funds, not construction materials. This Court concludes that no statutory

14

trust was activated under the Act and that the bankruptcy court therefore properly determined that the exception set forth in the defalcation provision, 11 U.S.C. § 523(a)(4), was inapplicable.

Shafer Redi-Mix laments that the result in this case provides a "roadmap" for future defendants, to wit: "Do not answer pleadings, do not cooperate with discovery, do not testify, and you cannot be found to have violated the MBCFA" (Pl. Br. 3).  However, this Court is similarly disinclined to create the roadmap for creditors that Shafer Redi-Mix advocates in this appeal, which is inconsistent with the design and application of the Michigan Building Contract Fund Act.

### III.   CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is affirmed in its entirety. A Judgment consistent with this Opinion will be entered.


DATED: March 17, 2009                           /s/ Janet T. Neff
                                                JANET T. NEFF
                                                United States District Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAFER REDI-MIX, INC.,

       Plaintiff-Appellant,               Case No. 1:08-cv-803

v.                                                HON. JANET T. NEFF

ROBERT D. CRAFT,

       Defendant-Appellee.
_____/

## **JUDGMENT**

      In accordance with the Opinion entered this date:

      **IT IS HEREBY ORDERED** that the appeal is DENIED and the judgment of the bankruptcy court is AFFIRMED.

DATED: March 17, 2009                    /s/ Janet T. Neff
                                               JANET T. NEFF
                                               United States District Judge